# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 17-55

CAMERON PARISH POLICE JURY, CAMERON PARISH SHERIFF AND

CAMERON PARISH SCHOOL BOARD

VERSUS

ALL TAXPAYERS, ET AL.

**********

## APPEAL FROM THE
### THIRTY-EIGHTH JUDICIAL DISTRICT COURT
### PARISH OF CAMERON, NO. 1019872
### HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED.

Gremillion, J., dissents and assigns written reasons.

Orson Billings, Assessor-Elect
Mona Kelley, Cameron Parish Assessor

Christopher J. Dicharry
Kean Miller, et al
P. O. Box 3513

Baton Rouge, LA 70821
(225) 387-0999
COUNSEL FOR OTHER:
   Louisiana Mid-Continental Oil and Gas Assoc.
   Louisiana Pulp and Paper Assoc.
   Louisiana Association of Business and Industry (LABI)
   Louisiana Industrial Development Executives Association
   Cameron, LNG, LLC

William Lee Schuette, Jr.
Jones, Walker, Waechter
8555 United Plaza, 5th Floor
Baton Rouge, LA 70809
(225) 248-2056
COUNSEL FOR PLAINTIFF APPELLANT:
   Cameron Parish Police Jury

Fred Lee Chevalier
Jones, Walker, et al.
8555 United Plaza Blvd, 5th Fl
Baton Rouge, LA 70809
(225) 248-2056
COUNSEL FOR PLAINTIFF APPELLANT:
   Cameron Parish Police Jury

Joseph Anthony Delafield
Attorney at Law
3401 Ryan St., #307
Lake Charles, LA 70605
(337) 477-4655
COUNSEL FOR PLAINTIFF APPELLANT:
   Cameron Parish School Board

Murphy James Foster, III
Breazeale, Sachse & Wilson
P. O. Box 3197
Baton Rouge, LA 70821-0000
(225) 387-4000
COUNSEL FOR OTHER:
   Louisiana Associated General Contractors, Inc.

Walter Richard House  Jr.
Attorney at Law
P. O. Box 727
Baton Rouge, LA 70821-0727
(504) 427-8808
COUNSEL FOR OTHER:
   Louisiana Dept. of Economic Development

William Boyce Monk
Stockwell, Sievert
P. O. Box 2900
Lake Charles, LA 70602
(337) 436-9491
COUNSEL FOR OTHER:
    Chamber/Southwest Louisiana

Patrick W. Pendley
Pendley Law Firm
24110 Eden St.
Plaquemine, LA 70764
(225) 687-6396
COUNSEL FOR DEFENDANT APPELLEE:
    JMCB, LLC

Patrick Bayard McIntire
Oats & Marino
100 E. Vermilion St., #400
Lafayette, LA 70501
(337) 233-1100
COUNSEL FOR PLAINTIFF APPELLANT:
    Cameron Parish Sheriff

Brian Andrew Eddington
Attorney at Law
8941 Jefferson Hwy, Ste 200
Baton Rouge, LA 70809
(225) 924-4066
COUNSEL FOR DEFENDANT APPELLEES:
    Margaret Jones
    Mona Kelley, Cameron Parish Assessor
    Orson Billings, Assessor-Elect

Troy D. Morain
The Morain Firm
8550 United Plaza Blvd., #702
Baton Rouge, LA 70809
(225) 767-7151
COUNSEL FOR DEFENDANT APPELLEE:
    JMCB, LLC

B. Troy Villa
Breazeale, Sachse & Wilson
P. O. Box 3197
Baton Rouge, LA 70821-3197
(225) 387-4000
COUNSEL FOR OTHER:
    Louisiana Associated General Contractors, Inc.

**Christopher D. Shows**
**Pierce & Shows**
**601 St. Joseph St.**
**Baton Rouge, LA 70802**
**(225) 388-9574**
**COUNSEL FOR DEFENDANT APPELLEE:**
**JMCB, LLC**

**Samuel Bryan Gabb**
**Plauche, Smith & Nieset**
**1123 Pithon Street**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR OTHER:**
**Calcasieu Parish Police Jury**

**Stanley Paul Baudin**
**Pendley Baudin & Coffin, LLP**
**24110 Eden St.**
**Plaquemine, LA 70764**
**(225) 687-6396**
**COUNSEL FOR DEFENDANT APPELLEE:**
**JMCB, LLC**

**Angela W. Adolph**
**Kean, Miller, LLP**
**P. O. Box 3513**
**Baton Rouge, LA 70821-3513**
**(225) 387-0999**
**COUNSEL FOR OTHER:**
**Louisiana Pulp and Paper Assoc.**
**Cameron LNG, LLC**
**Louisiana Association of Business and Industry (LABI)**
**Cameron, LNG, LLC**
**Louisiana Industrial Development Executives Association**
**Louisiana Mid-Continental Oil and Gas Assoc.**

**Terrence D. McCay**
**Attorney at Law**
**One Lakeshore Drive, Ste 1150**
**Lake Charles, LA 70629**
**(337) 430-0350**
**COUNSEL FOR OTHER:**
**Louisiana Association of Business and Industry (LABI)**
**Cameron, LNG, LLC**
**Louisiana Industrial Development Executives Association**
**Louisiana Mid-Continental Oil and Gas Assoc.**
**Louisiana Pulp and Paper Assoc.**

**Matthew W. Kern**
**Jones, Walker**
**8555 United Plaza Blvd., 5th F**
**Baton Rouge, LA 70809**
**(225) 248-2056**
**COUNSEL FOR PLAINTIFF APPELLANT:**
    **Cameron Parish Police Jury**

**SAUNDERS, Judge.**

The Cameron Parish Police Jury and the Cameron Parish School Board (collectively, the Police Jury), appeal the judgment of the trial court finding the proposed Cooperative Endeavor Agreement and Payment in Lieu of Taxes Agreement (CEA/PILOT) between the Police Jury and Cameron LNG invalid. Finding no error and no manifest error in the trial court's judgment, we affirm.

## I.

## <u>ISSUE</u>

We must decide whether the trial court erred in refusing to validate the Police Jury's proposed CEA/PILOT agreement.

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

Pursuant to the motion for judgment, Cameron LNG is in the process of constructing a natural gas liquefaction facility in addition to its existing natural gas regasification facility in the Hackberry area of Cameron Parish. As an incentive to Cameron LNG's continued capital investment in the area, the Police Jury sought to enter into an agreement with Cameron LNG to accept fixed annual payments in lieu of ad valorem taxes based upon the facility's fair market value. The Cameron Parish assessor and defendant taxpayers opposed the agreement. The trial court found in favor of the assessor and the taxpayers, and entered a judgment finding the agreement legally invalid. The Police Jury and the School

Board filed this appeal. For clarity, we note that Cameron LNG is not a party in this litigation.

## III.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court. *Mart v. Hill*, 505 So.2d 1120 (La.1987). The appellate court must find from the record (1) that a reasonable factual basis does not exist for the finding of the trial court and (2) that the record establishes that the finding is clearly wrong (manifestly erroneous). *Id*.

Questions of law however, such as the proper interpretation of a statute, are reviewed by the appellate court under the de novo standard of review. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36 (citations omitted).

## IV.

## LAW AND DISCUSSION

In general, the Corporate Endeavor Agreement and Payment in Lieu of Tax Agreement (CEA/PILOT) proposed by the Police Jury is an agreement whereby Cameron LNG agrees to pay $4,500,000 to Cameron Parish taxing authorities annually for the years 2016 through 2018, and $24,500,000 annually from 2019 through 2038, in lieu of paying *assessed* ad valorem taxes based upon a

1

percentage of the facility's *fair market value*. The Police Jury argues that its CEA/PILOT is authorized under various statutes, particularly including La.R.S. 33:2758, La.R.S. 33:9031, and La.R.S. 33:9031.1. The assessor and defendant taxpayers of Cameron Parish oppose the CEA/PILOT, arguing that it violates La.Const. art. VII, § 18, and § 21, and that no statute, including La.R.S. 33:2758, explicitly authorizes a parish police jury to reduce or effectively exempt ad valorem taxes for a single entity by substituting a contracted-for payment not based on fair market value.[1] We must agree with the assessor and defendant taxpayers.

***Statutory Law***

A CEA/PILOT agreement is authorized under La.R.S. 33:2758, entitled "Collection of ad valorem property taxes in Cameron Parish." It was enacted in 2007 and provides as follows:

> A. The Cameron Parish governing authority may collect ad valorem property taxes pursuant to a Cooperative Endeavor Agreement and Payment in Lieu of Tax Agreement voluntarily entered into by a person and previously approved by resolution of the Cameron Parish governing authority. Other local tax recipient bodies in Cameron Parish shall be authorized to collect ad valorem property taxes pursuant to a Cooperative Endeavor Agreement and Payment in Lieu of Tax Agreement voluntarily entered into by a person and previously approved by resolution of the tax recipient body and the Cameron Parish governing authority.

---

[1] While the CEA/PILOT payment amounts sound lucrative for the economically distressed parish, the defendant taxpayers of Cameron Parish assert that Cameron LNG has multi-billion-dollar facilities in the parish and that the parish would receive two to three times the amount of the contracted-for payments if the parish assessor assesses, and the sheriff collects, the ad valorem taxes based, as required, upon fair market value.

2

B. The Cameron Parish governing authority and other tax recipient bodies in the parish may grant future ad valorem tax credits based upon ad valorem property tax collections pursuant to an approved Cooperative Endeavor Agreement and Payment in Lieu of Tax Agreement.

C. In accordance with the provisions of Sections 18 and 20 of Article VII of the Constitution of Louisiana, payments of ad valorem property taxes pursuant to a previously approved Cooperative Endeavor Agreement and Payment in Lieu of Tax Agreement shall entitle the person making such payments to future ad valorem property tax credits from the Cameron Parish governing authority or other tax recipient bodies in the parish in amounts designated in such previously approved Cooperative Endeavor Agreement and Payment in Lieu of Tax Agreement.

La.R.S. 33:2758.

CEAs are further authorized by La.R.S. 33:9031, which is entitled "Cooperative endeavors with public body." It states, "For the purpose of aiding in the implementation of an economic development plan, any local governmental subdivision may cooperate or engage in cooperative endeavors with any economic development corporation or other local governmental subdivision or any other private or public entity or person." La.R.S. 33:9031.

Pursuant to La.R.S. 33:9031.1, entitled "Validation of cooperative endeavor agreements," the validation procedure for CEAs is through the Bond Validation Act (La.R.S. 13:5121-5130). It provides:

In order to provide a uniform, expeditious, and equitable procedure, with due regard for the public fisc and rights of persons in interest, for the judicial determination of the validity of any cooperative endeavor agreements authorized under this Chapter or generally by Article VII, Section 14(C) of the Louisiana Constitution and the transactions contemplated thereby; the provisions of Part XVI of Chapter 32 of Title 13 of the Louisiana Revised Statutes of 1950 [Bond Validation Act, La.R.S.

13:5121 et seq.] as amended, shall be applicable thereto, and suits to determine the validity of such cooperative endeavor agreements may be filed thereunder in the district court having jurisdiction for any party thereto as though such agreements constituted the issuance of bonds of a governmental unit.

La.R.S. 33:9031.1. (footnote omitted; content in brackets).

Louisiana Constitution Article VII, Section 14(C), referenced above, states: "**Cooperative Endeavors.** For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."

Based upon the foregoing statutes, the Police Jury can enter into CEAs and PILOTs pursuant to La.R.S. 33:2758, and the Bond Validation Act (La.R.S. 13:5121-5130), discussed further below, provides the procedural framework for seeking and contesting validation. Therefore, the question is not whether the Police Jury can enter into such agreements but whether this particular CEA/PILOT is valid under the statutes.

In the Police Jury's motion for judgment, it asserts:

11.

Receipt of advance payment of ad valorem taxes by the Taxing Authorities located in the Parish is authorized by La. Rev. Stat. Ann. § 33:2758 (1950). By La. Atty. Gen. Op. No. 07-0232 (September 14, 2007), the Louisiana Attorney General has opined that La. Rev. Stat. Ann. § 33:2758 (1950) is constitutional.

Even though this statute is ten years old, there are no reported cases of any litigation involving the statute. Thus, we have before us a matter of first

4

impression. The appellees argue that, unlike the agreement that gave genesis to this Post-Hurricane-Rita statute and the Attorney General's Opinion cited above, this CEA/PILOT does not involve a cooperative endeavor or joint venture, and is not a pre-payment of ad valorem taxes, but rather, it is an impermissible reduction or de facto partial exemption of ad valorem taxes by a local subdivision.

More specifically, in September 2007, in response to a request by Cameron Parish District Attorney Cecil Sanner, Attorney General Charles Foti issued an opinion concluding that La.R.S. 33:2758 is constitutional. Its application at that time was to the Parish's receipt of a proposal by Sabine Pass LNG, which was tax exempt, to enter into a CEA/PILOT agreement whereby Sabine would voluntarily pre-pay up to $2,500,000 annually (beginning in 2007) in exchange for tax credits against its future ad valorem tax liability when its exemption expired (2019-2028). At the time of the request for an opinion, each of the eleven Cameron Parish Taxing Authorities had entered into separate CEA/PILOT agreements with identical terms, except as to the amounts of the tax payments and future tax credits individual to each. Op.Atty.Gen., 07-0232 (9/14/07), 2007 WL 3026696.

Conversely, here, none of the taxing authorities have signed the agreement or filed affidavits that they want to enter into such agreement. Only the Police Jury and the School Board joined in this appeal. Additionally, the court notes that the CEA/PILOT agreement on page 11 under Article XIV incorporates by reference an Exhibit D entitled "Authorizing Resolutions of Taxing

5

Authorities." However, the cover page for Exhibit D is just that, a blank cover page without the resolutions that it shows as "attached."

The *Cooperative Economic Development Law* defines pertinent terms as follows:

> (1) "Cooperative endeavors" means any form of economic development assistance between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation, or individual. The term "cooperative endeavors" shall include but not be limited to cooperative financing, cooperative development, or any other form of cooperative economic development activity.
>
> (2) "Cooperative financing" means any method of financing an economic development project between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation, or individual. Said methods shall include loans, loan guarantees, land write-downs, grants, lease guarantees or any form of financial subsidy or incentive.
>
> (3) "Cooperative development" means any method of cooperative development or redevelopment between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation or individual. Said methods shall include any number of joint development agreements such as condominiums and cooperative ownership limited partnerships and investment syndicates.

La.R.S. 33:9022.

The succeeding statutes address *economic development project plans* including annual reports, plan reviews, limitation of liability, enforcement of judgments, tax increment financing, sales tax increment financing, and bond

6

financing. They encourage *public-private partnerships* to achieve economic development in the distressed area.

For example, La.R.S. 33:9029.1 provides that certain local governmental subdivisions can construct improvements on public property and then transfer the improved property to the other party to the cooperative endeavor agreement. Pursuant to La.R.S. 33:9029.2, the State, through the Commissioner of Administration, can enter into cooperative endeavor agreements to invest, pledge, use, or deposit state funds in furtherance of economic development. However, none of the statutes or jurisprudence authorize a police jury to enter into an agreement to reduce or effectively exempt ad valorem taxes for a single taxpayer already operating in the area.

Our jurisprudence provides multiple examples of legitimate public-private cooperative endeavor agreements. In *Board of Directors of the Industrial Development Board of the City of Gonzales, Inc. v. All Taxpayers, property Owners, Citizens of City of Gonzales*, 05-2298 (La. 9/6/06), 938 So.2d 11, the Louisiana Supreme Court upheld the legality of a public-private partnership in which an economic development district used its bonding authority to structure a financing arrangement to induce a Cabela's retail store to locate within the district. In *Denham Springs Economic Development Dist. v. All Taxpayers*, *Property Owners*, 04-1674 (La. 2/4/05), 894 So.2d 325, the Louisiana Supreme Court addressed a cooperative endeavor agreement in which taxing authorities pledged sales tax revenues to secure the payments of bonds issued to fund construction of a Bass Pro store. *Delta Staff Leasing, LLC v. South Coast Solar, LLC*, 15-1273

7

(La.App. 4 Cir. 5/11/16), 194 So.3d 745, involved a program by which the City of New Orleans lent money to certain applicants to foster economic development projects in post-Katrina New Orleans. Common to these examples is that each cooperative endeavor agreement involved a joint public–private undertaking in furtherance of a legitimate public purpose. Conversely here, the proposed contract presented for validation does not involve a joint public-private undertaking.

Likewise, legally valid PILOT agreements usually involve a public entity's lease of its own tax-exempt property for development purposes; the public entity then obtains a payment in lieu of tax agreement from the developer who pays an agreed upon amount in exchange for his own exemption from property taxes. *See Board of Assessors of City of New Orleans v. City of New Orleans*, 02-691 (La.App. 4 Cir. 9/25/02), 829 So.2d 501 and *St. Bernard I, LLC v. Williams*, 12-372 (La.App. 4 Cir. 3/13/13), 112 So.3d 922. Accordingly, the CEA/PILOT Agreement in this case, which merely excuses ad valorem taxes for a single commercial enterprise operating in the area, does not conform to the agreements or to the economic projects in reported cases.

Additionally, the agreement in this case violates Title 47 of Louisiana Revised Statutes, which sets forth explicitly detailed procedures for assessing and collecting ad valorem taxes, including the serious ramifications for assessors and collectors who do not follow the procedures. Those statutes provide in part: "All property subject to taxation shall be listed and assessed at the proper percentage of its fair market or use value as required by the constitution and laws of this state." La.R.S. 47:1957(B). "If any tax assessor intentionally or knowingly or through

8

negligence omits any taxable property from the assessment list, or permits it to be omitted therefrom, he and his sureties in solido shall be liable on his official bond for the full amount of the taxes due" plus ten percent interest, ten percent attorney fees, and costs of suit. La.R.S. 47:1957(F). Additionally, the tax commission "shall publicly reprimand any assessor if it shall appear that he is willfully negligent or unfair in the assessment of property, or in omitting it from the rolls, and if the tax commission deems it necessary, shall institute removal proceedings through the attorney general, for gross misconduct in office." La.R.S. 47:1957(G).

Moreover, after the assessor has prepared the lists showing the assessment of property in his parish, "his lists shall be exposed daily for inspection by the taxpayers and other interested persons[.]" and, he "shall give notice of such exposure for inspection in accordance with rules and regulations established by the Louisiana Tax Commission." La.R.S. 47:1992(A)(1)(a). Procedures and punishments for tax collectors are probably stricter: "The sheriffs of the several parishes of the state . . . shall be ex-officio collectors of state and parish taxes." La.R.S. 47:2051. " Every tax collector shall, before entering upon the duties of his office, take and subscribe to the oath of office prescribed by the constitution and laws of the state, and file the same with the legislative auditor." La.R.S. 47:2052(A). A tax collector attempting to collect taxes without giving bond, "or without having lawful authority so to do" is subject to a fine and imprisonment up to five years. La.R.S. 47:2053. We note that, while the Cameron Parish Sheriff originally joined in the motion for judgment in this case, he did not join in the appeal of the trial court's judgment invalidating the CEA/PILOT.

9

*Constitutional Law*

Louisiana Constitution Article VII, § 18, entitled "Ad Valorem Taxes" charges the parish assessor with the exclusive authority and responsibility of assessing all parish taxes based upon fair market value, providing in pertinent part (emphasis added):

(A) Assessments. Property subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation, which, except as provided in Paragraphs (C) and (G), *shall be a percentage of its fair market value*. The *percentage of fair market value shall be uniform throughout the state upon the same class of property*.

(B) Classification. The classifications of property subject to ad valorem taxation and the percentage of fair market value applicable to each classification for the purpose of determining assessed valuation are as follows:

| Classifications | Percentages |
|---|---|
| 1. Land | 10% |
| 2. Improvements for residential purposes | 10% |
| 3. Electric cooperative properties, excluding land | 15% |
| 4. Public service properties, excluding land | 25% |
| 5. Other property | 15% |

. . . .

(D) Valuation. *Each assessor shall determine the fair market value of all property subject to taxation within his respective parish* or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. *Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value* and use value of property *shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.*

(E) Review. The correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the Louisiana Tax

Commission or its successor, and finally by the courts, all in accordance with procedures established by law.

(F) Reappraisal. All property subject to taxation shall be reappraised and valued in accordance with this Section, at intervals of not more than four years.

. . . .

La.Const. art. VII, § 18.

Under our state constitution, uniformity has always been paramount. In *MidLouisiana Rail Corp. v. Louisiana Tax Com'n*, 588 So.2d 1163 (La. App. 1 Cir.1991), *writ denied*, 594 So.2d 895 (La. 1992), the first circuit held that the uniformity provision of the Louisiana Constitution requires the assessing authority to appraise and assess similar property in a uniform manner; likewise, the Tax Commission must determine the fair market value of all property subject to taxation in accordance with the criteria established by law requiring uniformity throughout the state. In *New Walnut Square Ltd. Partnership v. Louisiana Tax Com'n*, 626 So.2d 430 (La.App. 4 Cir. 1993), the fourth circuit held that as long as all taxpayers are treated the same and statutory criteria are followed, there is nothing inherently objectionable in a change in the way assessed value of property is calculated from year to year, as long as the new calculation more closely reflects the fair market value of the property.

In *Telecable Associates, Inc. v. Louisiana Tax Com'n*, 94-499 (La.App. 1 Cir. 11/9/95), 694 So.2d 279, *writ denied*, 96-483 (La. 4/19/96), 671 So.2d 927, the court found that the method of assessing fair market value, as formulated by two parish assessors, violated statutory and constitutional requirements of statewide uniformity in determining fair market value where the

11

method of assessment was not used throughout the state, was not formulated by the Tax Commission, and was not applied to other businesses besides cable companies.

In the Police Jury's motion for judgment, it stated (emphasis added):

12.

In order to encourage Cameron LNG's long -term capital investment and to facilitate its construction of the LNG Facility in the Parish, the Plaintiffs desire to enter into the Cooperative Endeavor Agreement, whereby the Taxing Authorities will *agree to not assess,* impose, or otherwise collect or attempt to collect *ad valorem taxes* from Cameron LNG on the LNG Facility during the term of the Cooperative Endeavor Agreement. (Cooperative Endeavor Agreement, Art. III).

Likewise, Article III of the CEA/PILOT stated (emphasis added):

ARTICLE III

In exchange for Cameron LNG's undertaking the obligations expressed in this Agreement, Taxing Authorities shall and hereby obligate themselves *to not assess,* impose, or otherwise collect or attempt to collect *ad valorem taxes* from Cameron LNG on the LNG Facility during the Contract Period and such Taxing Authorities (other than Newly Created Taxing Authorities) *shall only collect payments that do not exceed the amounts set forth in Article I above*.

In response to these provisions, in his answer to the motion for judgment, the Cameron Parish Assessor stated:

20.

While taking no position regarding the constitutionality, legality and /or validity of the undertakings, actions or agreements of any other Taxing Authority in exercise of its own taxing powers, out of an abundance of caution the Cameron Parish Assessor's Office would respectfully advise the Court that it objects

12

to the entry of any Judgment which requires or has the effect of requiring the Cameron Parish Assessor's office to assess the "LNG Facility" in a manner that is materially different from the manner in which it assesses other similarly situated taxpayers.

In addition to presenting this objection in several paragraphs of his answer, the assessor attached his letter to the attorney for Cameron LNG as an exhibit. The letter explains that La.Const. art. VII, § 18 imposes a mandatory and non-discretionary duty on the assessor to assess all property located in the Parish and list it on the assessment rolls at its assessed value. He also expressed concerns that disparate treatment of Cameron LNG would violate other taxpayer's rights to equal treatment; and he said that the amounts to be collected from Cameron LNG under the CEA/PILOT were "substantially" less than would be collected from them based upon the best information available to his office at the time. He closed by stating in part:

> Accordingly, please consider this letter as formal notification that the Cameron Parish Assessor's office will not be executing the Cooperate Endeavor And Payment In Lieu Of Taxes Agreement and our request that the draft agreement presently pending validation by the 38th Judicial District Court be amended to remove this office as a party and to remove any reference to the Assessor not assessing your property.

Subsequently, the Police Jury and School Board revised Article III and presented it for the first time to the court on the day of the hearing. The revised article states (emphasis added):

Article III

The Taxing Authorities agree that this Agreement shall supersede their respective rights to receive more from Cameron LNG than the Annual Payments as set forth in Article I. The Sherriff agrees that he shall collect only the amounts agreed to in Article I of this Agreement regardless of the assessment on the LNG Facility. In exchange for Cameron LNG's undertaking the obligations expressed in this Agreement, Taxing Authorities shall and hereby obligate themselves *to not collect* or attempt to collect *ad valorem taxes* from Cameron LNG on the LNG Facility during the Contract Period *which exceed the amounts set forth in Article I above.*

Cameron LNG shall retain the right to appeal any assessment or valuation of the LNG Facility by the Assessor to the Parish, sitting as the Cameron Parish Board of Review. During the term of this Agreement, the *Parish shall set the fair market value of the LNG Facility in an amount such that*, if all millages of the Taxing Authorities were applied to such amount, *the resulting ad valorem tax liability would equal the amount of the Annual Payment* in that tax year. *The Parish further agrees to certify the fair market value of the LNG Facility on the tax rolls of the Parish only in such amount as determined in the preceding sentence.* The Parish further agrees that it will support and defend Cameron LNG in any appeal regarding the assessment or valuation of the LNG Facility.

As argued by the assessor and the defendant taxpayers, the revision appears to operate as a pretext to supersede the assessor's exclusive constitutional authority to assess the LNG facility. The assessor's exclusive authority to assess the facility appears in La.Const. art. VII § 18(D) above, while the Police Jury's authority is limited in § 18(E) to one of review.

Louisiana Constitution Article VII, § 21, entitled " Other Property Exemptions," forbids exemptions from ad valorem taxes except in the enumerated exceptions. Pursuant to Section 21(F) only the State Board of Commerce and

14

Industry can enter into contracts exempting manufacturing establishments from ad valorem taxes and then only with the approval of the governor. It provides: "In addition to the homestead exemption provided for in Section 20 of this Article, the following property *and no other* shall be exempt from ad valorem taxation[.]" La.Const. art. VII, § 21 (emphasis added). Section 21 then enumerates types of property such as public lands, property owned by non-profit organizations, medical equipment leased by a non-profit, property of labor organizations and charitable clubs; it then stipulates that none of those properties can be used for commercial purposes unrelated to the exempt purposes. However, in paragraph (F), Section 21 states:

> Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state.

> The exemption shall be for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no taxes shall be collected thereon during the period of exemption.

> . . . .

Accordingly, not even the State Board of Commerce and Industry can enter into agreements that exempt ad valorem taxes for the extensive period called for in the contract under review. While the Police Jury and School Board argue that the current agreement does not exempt taxes, it operates as a partial exemption

15

of a manufacturer's taxes for twenty-three years by a local taxing authority, for which there is no precedent, and in a manner that is constitutionally prohibited.

## *Procedural Law*

The Bond Validation Act, which provides the procedural framework for the validation of CEA/PILOT agreements, contains ten statutes. The last statute in the Act, La.R.S. 13:5130, entitled "Bonds invalidated only for substantial defects; matters of form disregarded," mandates that such agreements are to be validated by the courts unless the court finds substantial defects or material errors and omissions. It states, "No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded." La.R.S. 13:5130.

At the conclusion of the validation hearing, given the expedited nature of the matter, Judge Fontenot issued his ruling from the bench, stating:

> I'm convinced -- and I'll make it as short and sweet as possible -- I am convinced that the idea of a cooperative endeavor agreement statutorily provided for, does not contemplate that an authority -- a parish authority, a municipal authority can waive taxes and substitute some sort of contractual obligation.
>
> It's -- there's no -- I admit that counsel says that there are very few in the jurisprudence and just the absence of one like this doesn't thereby rule them invalid. But this goes a step farther than any that have been reported and does not conform to the ideas set out in the cooperative endeavor agreement statutes.
>
> I think that the waiver of current and future taxes and the substitution there for some contract liability is beyond the authority of the governmenting -- governmental authorities of this parish to engage in and to do. And the very fact that it's called a cooperative

16

endeavor agreement does not validate it. If it is -- if it is beyond their authority and it's invalid, giving it that title does not empower them to engage in an otherwise legally invalid agreement.

The Police Jury asserts that the trial court erred in not setting forth specific defects in the CEA/PILOT. However, it is well-settled that "[a] judgment and reasons for judgment are two separate and distinct documents. La. C.C.P. art.1918. Appeals are taken from the judgment, not the written reasons for judgment. *See* La. C.C.P. arts. 2082, 2083." *Greater New Orleans Expressway Com'n v. Olivier*, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24. Moreover, while broadly stated, Judge Fontenot did articulate defects in the proposed agreement in stating that it does not conform to the cooperative endeavor statutes, as discussed above. Judge Fontenot used terminology indicating that he had read the cases and agreed with the analysis put forth in detail by the taxpayers. The arguments presented to this court on appeal are the same arguments presented to the trial court in the defendant taxpayer Margaret Jones's "Memorandum in Opposition to Motion for Judgment." Therefore, Judge Fontenot had considered all of the arguments when he issued his ruling.

As to the remaining procedural statutes under the Bond Validation Act, La.R.S. 13:5121provides three definitions, among which is "governmental units" including the Cameron Parish entities involved in this litigation. Pursuant to La.R.S. 13:5122, entitled "Law applicable; legislative intent," the exclusive procedure for validating the agreement is under the Bond Validation Act.[2]

---

[2] All suits, actions and proceedings of whatever nature affecting the validity of bonds of any governmental unit, or the interest thereon, or the sale

17

Louisiana Revised Statutes, 13:5123, entitled "Proceedings by governmental unit to establish validity; procedure; parties defendant," provides the type of pleading to be filed by the governmental unit seeking validation of the agreement.[3]   In this case, the Police Jury properly filed a motion for judgment naming the taxpayers as defendants.

Louisiana Revised Statutes 13:5124, entitled "Service by publication of motion for judgment; parties defendant; notification," provides that publication of the motion for judgment constitutes service on the parties.[4]   Here, the record

thereof, or the election, if any, authorizing the issuance of said bonds shall be brought only in accordance with the provisions of this Title. These provisions shall supersede all other acts and statutes on the subject and be controlling in all such cases notwithstanding the provisions of any other law or charter to the contrary; provided, however, nothing herein contained shall affect, change, alter or modify in any way any peremptive or prescriptive period for the contesting of bonds of governmental units or elections authorizing their issuance, established pursuant to the constitution and statutes of this state which shall continue to govern the time within which actions covered thereby may be filed. It is hereby declared that it is the intention of the legislature in enacting this law to provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure the marketability of bonds in investment channels. It is not the intention of the legislature to require or to encourage the validation of all bonds by the judiciary.

La.R.S. 13:5122.

[3] Such proceedings shall be brought by filing a motion for judgment describing such bonds and the proceedings had relative to the issuance thereof or the providing of a new or different source of payment therefor and alleging that such bonds when issued will be valid and legal obligations of the issuing governmental unit or that the action taken with respect to providing a new or different source of payment is valid and legal. In such motion for judgment the taxpayers, property owners and citizens of the issuing governmental units, including nonresidents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of such bonds shall be made parties defendant.

La.R.S. 13:5123.

[4] A. (1) All such parties shall be served by publishing the motion for judgment in a newspaper published in or having general circulation in such

18

contains proof of publication and affidavits of service on the State Bond Commission. Initially, the defendant taxpayers objected to the Police Jury's motion for judgment on the basis of insufficient service, which the trial court deferred to the merits, and then, finding the CEA/PILOT substantively invalid, he did not return to this exception. It is well-settled that a trial court's omission of a ruling on an issue is deemed to be a denial of that issue. *See Leday v. Safeway Ins.*

---

governmental unit in the manner hereinafter set forth. Upon the filing of the motion for judgment, the court shall enter an order requiring the publication of the motion two times within a period of fifteen consecutive calendar days from the date of the issuance of the order, specifying the dates for publication thereof with the first publication as hereinabove provided to be not later than eight days from and after the date of the issuance of the order, and at the same time fix a time and place for hearing the proceeding, which time and place shall be published with the motion for judgment. The date fixed for the hearing shall be at least ten days, but not more than thirteen days, after the second publication of such motion for judgment.

(2) By publication of such motion for judgment, all taxpayers, property owners, and citizens of such governmental unit including nonresidents owning property or subject to taxation therein, and all other persons having or claiming any right, title, or interest in any property or funds to be affected in any way by the issuance of such bonds, or having or claiming to have any right or interest in the subject matter of such motion for judgment, shall be considered as parties defendant in such proceedings and as having been duly served, and the court shall have jurisdiction of them the same as if each of them were named individually as a party defendant in such motion for judgment and personally served with process.

B. The party filing a motion for judgment shall also cause notification of the filing to be made upon the State Bond Commission and the attorney general by mailing a certified copy of the motion for judgment by registered or certified mail, with return receipt requested. The State Bond Commission shall establish and maintain on its website an online database of such motions for judgment and shall post to such database within two days of receipt the caption of the motion for judgment, including the parties, the docket number, judicial district, and parish in which the motion for judgment is filed. The State Bond Commission may remove from an online database on its website such motions and captions after three years from their initial posting on the website. No judgment can be rendered until the party filing a motion for judgment files in the record an affidavit of the individual who mailed the motion for judgment to the State Bond Commission and attorney general, showing that it was properly addressed, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt thereon.

La.R.S. 13:5124.

19

*Co. of La.*, 04-610 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084. We find no error in the tacit denial of this exception, as La.R.S. 13:5124, providing for service by publication, is satisfied. Likewise, we pretermit discussion of other exceptions that the trial court denied or deferred to the merits and did not address, as the defendants did not answer the appeal and assign error as to those exceptions.

Louisiana Revised Statutes 13:5125, entitled "Contesting issuance of bonds or action taken with respect to source of payment therefor; notice and hearing; service on member of governing body," provides that the procedure for contesting validation is the same as that provided in R.S. 13:5123 for the governmental unit seeking validation.[5] The Police Jury argues that the defendant taxpayers used improper procedure in opposing the motion for judgment by filing

---

[5] Any person, corporation, or association desiring to contest or enjoin the issuance of any such bonds or action taken providing for a new or different source of payment for outstanding bonds shall proceed by motion for judgment brought in the court having jurisdiction as provided in R.S. 13:5123. Upon the filing of any such motion for judgment, the court shall enter an order within five days following such filing requiring the publication of the motion in some newspaper published in or having general circulation in such governmental unit two times within a period of fifteen consecutive calendar days from the date of the issuance of the order specifying the dates for publication thereof, with the first publication as provided in this Section to be not later than eight days from and after the date of the issuance of the order, and at the same time fix a time and place for hearing the proceeding, which time and place shall be published with the motion for judgment. The date fixed for the hearing shall be at least ten days, but not more than thirteen days, after the second publication of such motion for judgment. In addition to such publication, the plaintiff must secure personal service at least five days prior to the second publication of the motion for judgment on at least one member of the governing body of the governmental unit whose actions or proceedings are sought to be contested or enjoined, and must cause notification of the motion for judgment to be made upon the State Bond Commission and the attorney general by mailing a certified copy of the motion for judgment by registered or certified mail, with return receipt requested. The State Bond Commission shall post to its online database within two days of receipt the caption of the motion for judgment, including the parties, the docket number, judicial district, and parish in which the motion for judgment is filed. The State Bond Commission may remove from an online database on its website such motions and captions after three years from their initial posting on the website.

La.R.S. 13:5125.

20

*exceptions* where this statute states that the only way to oppose the motion is by filing a cross-motion for judgment and then consolidating the actions pursuant to La.R.S. 13:5127.[6]  We disagree.  None of the statutes address cross-motions or suggest that filing a cross-motion and then filing a motion to consolidate is the only way to oppose a motion in this expedited process.  In fact such double filing, not to mention double publication with a repeat of the time delays, defeats the purpose of expeditious validation procedures in such matters.

While the Bond Validation Act does not specifically address *exceptions* as a means of objecting to a motion for judgment, the defendants point out that R.S. 13:5125, as a practical matter, does not apply in this case where a motion for judgment has already been filed by the governmental entity as the plaintiff and where the taxpayers filed answers as the defendants.  This is a valid point because La.R.S. 13:5125 discusses the *plaintiff's* personal service of the motion for judgment on a member of the governing authority.  The defendants argue persuasively that La.R.S. 13:5126 is more applicable in this case where they did file answers and then objections by "pleading to the motion."  We agree.  Louisiana Revised Statutes 13:5126, entitled "Answer by party defendant;

_____

[6] Upon motion of the plaintiff or the governmental unit the court in which the first proceeding to invalidate or sustain the bonds or the action taken with respect to a new or different source of payment thereof was instituted may enjoin the commencement by any person, corporation or association of any other action or proceeding involving the validity of the bonds or any matter recited in the motion for judgment, and may order a joint hearing before it of all such issues then pending in any actions or proceedings in any court in the state, and may order all such actions or proceedings consolidated with the validation proceeding pending before it, and may make such orders as may be necessary or proper to effect consolidation and as may tend to avoid unnecessary costs or delays. Such order shall not be appealable.

La.R.S. 13:5127.

21

intervention by interested parties; determination of questions; orders; precedence over other business," provides the procedure for answering or intervening in the validation proceedings by "pleading to the motion," indicating the motion that had already filed.[7]

During the hearing, the trial court made it clear that it did not matter what the objection was called. This is consistent with jurisprudence holding that content, rather than headings or titles, is what the court considers in resolving the issues. The "caption of the pleading does not control; rather, the court is obligated to determine the substance of the pleading." *Thompson v. Harrington*, 99-571, p. 6 (La.App. 3 Cir. 10/13/99), 746 So.2d 652, 656 (citing *Smith v. Cajun Insulation, Inc.*, 392 So.2d 398 (La.1980)).[8]

---

[7] Any party defendant may answer such motion for judgment within seven days after the second publication thereof but not thereafter. Any property owner, taxpayer, citizen, or other person in interest may become a party to said proceedings by pleading to the motion within seven days after the second publication thereof, or thereafter by intervention upon leave of court. In the event no answers or pleadings are filed by any person with respect to the motion or judgment within the time set forth in the preceding sentences of this Section, the plaintiff may file a motion requesting the court to consider and pass upon questions certified therein in rendering its judgment. At the time and place designated in the order for hearing, the judge shall proceed to hear and determine all questions of law and fact in said cause and may make such orders as to the proceedings and such adjournments as will enable him properly to try and determine the same and to render a final judgment therein with the least possible delay. To the extent possible and practicable under the circumstances, judgment shall be rendered within ten days after the hearing is concluded.

La.R.S. 13:5126.

[8] The Police Jury cites *Central Louisiana Bank v. Avoyelles Parish Police Jury*, 493 So.2d 1249 (La.App 3 Cir. 1986), where this court found that an objection to a bond issuance was a nullity due to the pleading's utter failure to comply with any of the procedures in La.R.S. 13:5125, including publication. However, that case is distinguishable for the reasons stated, because there, the plaintiff's objection was the first pleading filed in the matter.

22

Louisiana Revised Statutes 13:5128[9] provides the procedure for appealing the trial court's judgment, and La.R.S. 13:5129,[10] entitled "Decree validating bonds binding and conclusive," provides the binding effect of a judgment validating such agreement. We have already discussed the final statute of the Bond Validation Act, La.R.S. 13:5130, and found no error in the trial court's ruling that this particular CEA/PILOT is not valid under the provisions discussed above.

---

[9] From the final judgment of the court an appeal shall lie to the supreme court where permitted by the constitution of this state, otherwise to the court of appeal. No appeal to the court of appeal or the supreme court shall be allowed unless the petition therefor is filed within ten days from the date on which the judgment of the court is entered and only if the party taking the appeal has the record certified to the proper appellate court and his brief filed therein within twenty days from the date on which the judgment of the court is entered, or such shorter time as may be required by the appellate court. The appellee shall have fourteen days in which to file a reply brief and the case shall be heard no later than seven days thereafter. The court of appeal shall render a decision within the seven day period following the hearing. In the event the court of appeal finds a statute or law unconstitutional, an appeal from a decision of the court of appeal affirming or overturning the final judgment of the district court lies to the supreme court provided such appeal is taken within five days of the date of such decision. The supreme court shall consider such appeal within the time limits and in the manner as prescribed above for direct appeals from the district court. The parties may otherwise apply to the supreme court for writs of review or certiorari in accordance with law.

La.R.S. 13:5128.

[10] In the event the decree of the court validates the bonds or validates the action taken to provide a new or different source of payment for the bonds, and no appeal is taken within the time above prescribed, or if appeal is taken and the decree of the court is affirmed, such decree shall be forever binding and conclusive as to the validity of the bonds, the validity of the tax, any lease or other means provided for the payment of such bonds and the validity of all pledges of revenues and of all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of such bonds, and as to all matters adjudicated and as to all objections presented or which might have been presented in such proceeding, and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings.

La.R.S. 13:5129.

## V.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court. Costs of this appeal are assessed to the plaintiffs, the Cameron Parish Police Jury and the Cameron Parish School Board. Finally, in this case, the Police Jury requested in its motion for judgment a determination of the validity and constitutionality of its proposed CEA/PILOT Agreement with Cameron LNG. For all of the above-stated reasons, while we do not find the statutes allowing CEA/PILOT agreements unconstitutional, we find that the CEA/PILOT Agreement put forth for validation by the Police Jury in this case violates La.Const. art. VII, §§ 18 and 21, and Title 47 of the Revised Statutes.

**AFFIRMED.**

COURT OF APPEAL

THIRD CIRCUIT

STATE OF LOUISIANA

DOCKET NUMBER 17-55

CAMERON PARISH POLICE JURY, ET AL.

VERSUS

ALL TAXPAYERS

**GREMILLON, Judge, dissents.**

I dissent from the opinion of the majority and would find that the Cooperative Endeavor Agreement/Payment in Lieu of Taxes (CEA/PILOT) was validly and lawfully confected between the various governing authorities and Cameron LNG, LLC (LNG).

It is presumed that the Legislature acts within its constitutional authority in passing a statute; therefore, courts are required to "construe a statute so as to preserve its constitutionality when it is reasonable to do so." *City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund*, 05-2548, p. 12 (La. 10/1/07), 986 So.2d 1, 12. 1978 La.Acts No. 617 enacted the "Louisiana Economic Development Law," La.R.S. 33:9020, et seq. Louisiana Revised Statutes 33:9031 authorizes any local governmental subdivision to enter into a cooperative endeavor with a private corporation. Even more specific to the issue at hand, though, is La.R.S. 33:2758. The majority agrees with me and the Louisiana Attorney General that this statute is constitutional. It allows the Cameron Parish governing authority—that is to say, the Cameron Parish Police Jury—to **collect** ad valorem taxes pursuant to a CEA/PILOT. Section 2758 says nothing about assessment of

the taxes, just the collection of them. Further, basing ad valorem taxes upon the terms of a CEA/PILOT does not exempt the taxpayer from ad valorem taxes; it merely provides a different method of their calculation.

In what can only be described as a strange way to prove than an agreement is invalid, the majority cites what it admits are "multiple examples" of similar agreements that our courts have found to be valid. It then gamely attempts to distinguish those agreements, first, by declaring that the instant agreement "does not involve a joint public-private undertaking." I respectfully disagree. The mind struggles to conceive of a something that is more of a joint public-private undertaking than this one which involves the school board, the police jury, and the sheriff on the public side and a massive business enterprise producing thousands of jobs on the private side.

Those other unquestionably-valid agreements are different, says the majority, because they "usually" involve an arrangement wherein the private business leases property from a public entity to form the foundation upon which the PILOT is based. First, I would suggest that what "usually" happens is not a solid legal argument. It is certainly insufficient as a basis for overriding the political will of the people as expressed by the police jury and the school board. Second, the statute authorizing this PILOT (a statute the majority and the attorney general both conclude is valid and constitutional) does not limit these agreements to situations involving private leasing of public property in any way. That restriction simply does not exist.

The Louisiana Constitution addresses ad valorem taxes in exhausting detail. Article VII, §18, governs the assessment of ad valorem taxes. It provides that "[p]roperty subject to ad valorem taxation shall be listed on the assessment rolls at its assessed valuation," which shall be a percentage of its fair market value (FMV),

2

and that percentage shall be uniform throughout the state on the same classes of property. Article VII, §21, opens, "In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be *exempt* from ad valorem taxation. . . ." (Emphasis added). Article VII, §21(F) authorizes exemptions from ad valorem taxes by agreement with the State Board of Commerce and Industry and only for a period of ten years.[1] This section itself belies the majority's conclusion that, "Under our state constitution, uniformity has always been paramount." *See Cameron Parish Police Jury v. All Taxpayers*, 17-55, p. 11, (La.App. 3 Cir. __/__/17), ___So.3d___, ___. The State has the clear authority to exempt some taxpayers from ad valorem taxes. Section 21(F), though, merely addresses the granting of an exemption from ad valorem taxes, and the CEA/PILOT did not grant an exemption. Article VII, §21(F) does not apply to this case.

"The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 526–27, 79 S. Ct. 437, 440–41 (1959).

> The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. *Harper v. Virginia Board of Elections*, 383 U.S. 663, 666, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169. Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation. As stated in *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 526—527, 79 S.Ct. 437, 440—441, 3 L.Ed.2d 480:

---

[1] Such a contract is in the record, at Tr. II, p. 202, which exempts LNG from *all* ad valorem taxes until 2018 with an additional five years renewal upon LNG's application, signed by Governor Bobby Jindal. There is a second such contract at Tr. II, p. 308 which grants an exemption through 2021, again with a five-year renewal through 2026, signed by Governor John Bel Edwards.

> 'The States have *a very wide discretion in the laying of their taxes*. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to *ensure revenue* and *foster their local interests*. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value.'

*Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S. Ct. 1001, 1003 (1973) (Footnote omitted) (Emphasis added). Whether such classifications are properly established requires that a court determine whether the law is reasonably designed to further a state policy. *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734 (1974).

In enacting the Cooperative Economic Development Law, the Legislature enacted specific findings and declared that:

(1) There exists in some of the regions, parishes, and municipalities of the state a condition of substantial and persistent unemployment, underemployment, and other forms of economic distress.

(2) Such unemployment, underemployment, and other forms of economic distress cause hardships to many individual citizens of the state and their families, waste invaluable human resources, and adversely affects the welfare and prosperity of the people.

(3) The maintenance of the economy of the several local governmental subdivisions of the state at a high level is necessary to overcome these problems and is vital to the best interest of the state.

(4) The maintenance of the economy of the several local governmental subdivisions of the state at a high level is a matter of public policy and the cooperative economic development activities

4

and powers prescribed and conferred by this Chapter are for a public purpose for which public money may be expended.

(5) As the maintenance of the economies of said local political subdivisions at a high level is found and declared to be a public purpose, the state's assistance to areas and regions of substantial and persistent unemployment, underemployment, and other forms of economic distress is necessary for the employment of effective steps in the planning, promotion, and financing of local economic development.

(6) State authorization to local governmental subdivisions, public corporations, and public benefit corporations to engage in cooperative endeavors with each other, the United States or its agencies, or with any public or private associations, corporations, or individuals for the purpose of economic development would help said local governmental subdivisions to alleviate the conditions of unemployment, underemployment, and other forms of economic distress presently existing in their areas, and as such, is in the public interest.

(7) Economic development is a legitimate concern of government because it serves the public interest, but it is not purely and solely a public purpose, since successful economic development serves the private interests of business and industry as much as the public interest.

(8) Public-private partnerships which take advantage of the special expertise and experience of representatives of the private sector can be among the most effective programs to encourage and maintain economic development.

(9) The economic development needs of the state of Louisiana require the existence of entities which can function as public-private partnerships, taking advantage of the congruence between the public interest and the interest of business and industry.

(10) It is in the best interest of the state of Louisiana and of its regions, parishes, and municipalities to encourage, create, and support public-private partnerships and to permit and encourage participation by representatives of private-sector industries which may benefit from economic development programs, while providing appropriate protections for the public interest.

La. R.S. 33:9021. Courts give considerable deference to a legislature's determination of what constitutes a public purpose. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 125 S.Ct. 2655 (2005). The question, then, is whether the CEA/PILOT is reasonably tailored to further the legitimate public interests of the

5

citizens of Cameron Parish. This agreement is clearly tailored to further a legitimate public purpose as expressed in the Cooperative Economic Development Law, La.R.S. 33:9021 and La.R.S. 33:2758.

As things stand under the majority's ruling, LNG will owe *no* ad valorem taxes until possibly as late as 2026. Under the CEA/PILOT, LNG will pay as much as $209.5 million in payment in lieu of taxes during that same period, and can pay no less than $45,523,815.10. And Cameron Parish, in exchange for reduced ad valorem tax receipts, will enjoy an investment in permanent facilities for natural gas liquefaction and export that will cost over $9 billion to construct and will employ 3,692 additional residents.[2] The majority notes that the defendants *argue* that the parish will receive many times what will be recovered under the CEA/PILOT were LNG's property to be assessed at full FMV. I note, though, that there is absolutely no *evidence* in the record that this assertion is correct. I would further note that the only way this prediction by defendants can be fulfilled is if they were to prevail in a pending class-action lawsuit in the Nineteenth Judicial District Court in which they are contesting the validity of the contract between LNG and the State Board of Commerce and Industry. And in any event, this consideration represents a usurpation by the majority of the police jury's constitutional authority to determine what is in its constituents' best interests. La. Const. art. VI, §7.

I also take strong issue with the majority's opinion that the CEA/PILOT poses "serious ramifications for assessors who do not follow the procedures" for assessing and collecting ad valorem taxes. *See Cameron Parish Police Jury v. All Taxpayers*, 17-55, p. 9, (La.App. 3 Cir. __/__/17), ___So.3d___, ___. The majority cites La.R.S. 47:2957(B) for the proposition that the CEA/PILOT places

---

[2] The record shows that, of the over $9 billion invested in the facility, $4.42 billion will be spent directly on labor and engineering services.

6

the assessor in jeopardy of being liable for the taxes LNG might otherwise owe. Louisiana Revised Statutes 47:1957 only places an assessor at risk when he omits "taxable property" from the assessment list. The law as it exists grants a wide array of exemptions from ad valorem taxes. See La. Const. Art. VII, §§ 19-21. So assessors are accustomed to making the proper determination of what is taxable and what is not; indeed, that is a core function of his position. Furthermore, the agreement between the State Board of Commerce and Industry and LNG provides, at Article IX, that LNG shall provide an annual report to the assessor *on a form prepared by the assessor* so that the property can be listed in the assessment rolls; therefore, provision has already been made for the Cameron Parish Assessor's function of listing LNG's property in the rolls.

The same reasoning protects the sheriff from any possible difficulties. Under La.R.S. 33:2758, the sheriff has "lawful authority" to collect a payment in lieu of taxes from LNG. To suggest otherwise is to ignore the plain language of the statute.

The Cameron Parish Police Jury, in my opinion, has confected an agreement with LNG that does further a legitimate public purpose, and I would reverse the trial court.